UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APICA SELLERS REPRESENTATIVE, LLC

Plaintiff,

v.

ABBOTT LABORATORIES

Defendant.

Case No. 1:23-cv-01034-ALC-OTW

**JOINT ELECTRONIC DISCOVERY SUBMISSION NO. 1 AND ~~[PROPOSED]~~ ORDER**

One or more of the parties to this litigation have indicated that they believe that relevant information may exist or be stored in electronic format, and that this content is potentially responsive to current or anticipated discovery requests. This Joint Submission and ~~[Proposed]~~ Order (and any subsequent ones) shall be the governing document(s) by which the parties and the Court manage the electronic discovery process in this action. The parties and the Court recognize that this Joint Electronic Discovery Submission and ~~[Proposed]~~ Order is based on facts and circumstances as they are currently known to each party, that the electronic discovery process is iterative, and that additions and modifications to this Submission may become necessary as more information becomes known to the parties.

**(1) Brief Joint Statement Describing the Action**

Apica Sellers Representative, LLC's ("Apica Sellers") brings causes of action for breach of contract and declaratory relief against Defendant Abbott Laboratories ("Abbott" or "Defendant") arising from Abbott's alleged failure to fulfill its obligations under the July 2, 2014 Equity Purchase Agreement ("EPA") between the parties' predecessors-in-interest.

Apica Sellers contends that Abbott (itself and/or by and through its predecessors-in-interest) developed and commercialized one or more "MCS Surgical Implantation Systems," as defined in Section 2.05 of the EPA, and products, including without limitation the HeartMate 3™, that utilize Apica Cardiovascular Limited's ("Apica") (and/or its affiliates' or predecessors-in-interest's) intellectual property incorporating a "Product Coil." Apica Sellers contends that each of four Milestones set forth in Section 2.05 of the EPA have occurred: (i) first use in a human; (ii) CE mark approval; (iii) FDA approval; and (iv) 500 sales. These milestones triggered Abbott's obligations to make certain payments to Apica Sellers pursuant to the terms of the EPA. Despite this, Abbott refuses to pay Apica Sellers the owed Milestone Payments.

Apica Sellers contends that it is entitled to the sum of all Milestone Payments due (i.e., $40,000,000.00), plus any applicable royalty owed pursuant to Section 2.05 of the EPA (i.e.,

$.0001 per Sale occurring before payment of each such Milestone Payment), plus pre-judgement interest on the amount of each Milestone Payment, plus any applicable royalty running from the date that payment became due until the date of final judgment. Apica Sellers also reserves the right to seek an award of attorneys' fees and/or post judgment interest as appropriate.

Abbott denies that any of the Milestone Events, as set forth in the EPA have been triggered and denies that it is liable for Apica Sellers' claims. Abbott sells the HeartMate 3™ Left Ventricle Assist Devices (LVAD). This is a mechanical circulatory support pump. It is attached to the heart using the HeartMate 3 Apical Cuff, sutured to the left ventricle. The HeartMate 3 LVAD and related parts and accessories were developed by Thoratec Corporation ("Thoratec"), which Abbott acquired through a series of transactions. Abbott acquired St. Jude Medical, Inc. ("SJM") in 2017. Prior to that, SJM had acquired Thoratec in 2015. Thoratec acquired Apica Cardiovascular Limited ("Apica") on July 2, 2014 through an Equity Purchase Agreement (EPA). Apica is now an affiliate of Abbott.

Abbott separately sells the HeartMate 3 Coring Tool, an accessory compatible with the HeartMate 3 Apical Cuff. This optional tool facilitates resect of a myocardial plug from the left ventricle prior to inserting the HeartMate 3 LVAD. The HeartMate 3 Coring Tool does not use intellectual property that incorporate the Product Coil referred to in the EPA. Neither Abbott nor its predecessors-in-interests developed or commercialized the MCS Surgical Implantation System defined in the EPA, and no Milestone Event has ever occurred. Abbott denies owing any monies to Apica Sellers under the EPA or on any other claim.

(a) **Estimated amount of Apica's Claims:**

_ Less than $100,000
_ Between $100,000 and $999,999
**X** Between $1,000,000 and $49,999,999
_ More than $50,000,000
**X** Equitable Relief
_ Other (if so, specify): Attorneys' fees/pre-judgment interest/royalties/post-judgment interest

(b) **Estimated amount of Abbott's Counterclaim/Cross-Claims:**

**X** Less than $100,000
_ Between $100,000 and $999,999
_ Between $1,000,000 and $49,999,999
_ More than $50,000,000
_ Equitable Relief
**X** Other (if so, specify): Court costs/attorneys' fees

**(2)** **Competence**. Counsel certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

**(3) Meet and Confer**. Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred to discuss these issues.

Date(s) of parties' meet-and-confer conference(s): May 24, 2023, October 12, 2023, and the exchange of iterative drafts through and including to December 14, 2023.

**(4) Unresolved Issues**: After the meet-and-confer conference(s) taking place on the aforementioned date(s), the following issues remain outstanding and/or require court intervention: None.

As set forth below, to date, the parties have addressed the following issues:

**(5) Preservation.**

(a) The parties have discussed the obligation to preserve potentially relevant electronically stored information and agree to the following scope and methods for preservation, including but not limited to: retention of electronic data and implementation of a data preservation plan; identification of potentially relevant data; disclosure of the programs and manner in which the data is maintained; identification of computer system(s) utilized; and identification of the individual(s) responsible for data preservation, etc.

Apica Sellers: Apica Sellers has issued a preservation notice to and executed a document hold on its sole members, Seroba Life Sciences Limited and TriVentures Fund II LP, and certain outside shareholders who may reasonably be expected to be custodians of potentially relevant documents or information, with instructions on preserving all ESI that relates to the subject of this litigation. Apica Sellers has also periodically reinforced the need to preserve potentially relevant information both verbally and in writing.

Abbott: The ESI in this case implicates three separate acquisitions that occurred at different points in time, and only one of which directly involved Abbott. First, in July 2014, Thoratec acquired Apica. Second, in July 2015, St. Jude Medical acquired Thoratec. Finally, in January 2017, Abbott acquired St. Jude Medical. Abbott has taken reasonable steps to identify and preserve potentially relevant documents and information that came into its possession as part of the latter acquisition. This includes issuing litigation hold notices, with periodic reminders, to custodians likely to possess potentially relevant documents and information, and preserving data from certain former employees, legacy systems, shared drives, and centrally located repositories.

(b) State the extent to which the parties have disclosed or have agreed to disclose

the dates, contents, and/or recipients of "litigation hold" communications.

Apica Sellers: Apica Sellers is willing to disclose the dates and names of the recipients of any initial litigation hold communications (but not the contents of those communications); provided that Abbott agrees to do the same.

Abbott: Abbott will not disclose information pertaining to its litigation hold process, given the privileged and confidential nature of that information and lack of direct relevance to the merits of the case.

(c) The parties anticipate the need for judicial intervention regarding the following issues concerning the duty to preserve, the scope, or the method(s) of preserving electronically stored Information:

None at this time. The parties reserve the right to bring issues pertaining to the preservation, scope, and methodology of preserving and/or producing ESI to Court's attention, should such issues arise.

**(6) Search and Review**

(a) The parties have discussed methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. Some of the approaches that may be considered include: the use and exchange of keyword search lists and "hit reports"; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on the preservation, search, and production of back-up, archival, legacy, or deleted electronically stored information; testing; sampling; etc. To the extent the parties have reached agreement as to search and review methods, provide details below:

Scope: The parties will meet and confer in good faith to reach agreement on the specific custodians, search terms, and date ranges to be encompassed by the ESI production process.

Keyword Lists: As discovery proceeds and develops, the parties will meet and confer regarding appropriate keyword lists.

Hit Reports: As discovery proceeds and develops, the parties will meet and confer regarding hit counts, if necessary, in the event that certain search terms are producing an unreasonable and/or disproportionate number of hits in an effort to strike an appropriate balance between producing all responsive documents and information on the one hand, while refraining from producing an inordinate amount of non-responsive documents and information on the other hand.

Machine Learning / AI / TAR: The parties agree that they may employ machine learning and AI/TAR techniques in an effort to identify, review, and produce likely responsive documents and information.

Limitations of Fields / File Types to be Searched: The parties expect that emails, PDFs, word processing documents, spreadsheets, presentations, and images, may be among the types of files to be searched and produced. The parties have not identified any limitations on fields or file types at this time. As discovery proceeds and develops, the parties will meet and confer regarding any appropriate limitations.

Date Restrictions: The parties agree that documents and information created before January 1, 2013 need not be searched.

Limitations on Inaccessible Materials: The parties shall not be obligated to include in their searches for potentially responsive materials, documents and information from sources that are not reasonably accessible without undue burden or cost pursuant to Federal Rule of Civil Procedure 26(b)(2)(B). It is also understood and agreed among the parties that, to the extent any ESI discoverable in this action is subject to the regulation or protection of the European Union's General Data Protection Regulation ("GDRP"), any preservation, access, review, and/or production of such ESI shall be done in compliance with the GDRP.

(b) The parties anticipate the need for judicial intervention regarding the following issues concerning the search and review of electronically stored information:

None at this time.

**(7) Production**

(a) Source(s) of Electronically Stored Information. The parties anticipate that discovery may occur from one or more of the following potential source(s) of electronically stored information:

Apica Sellers: Apica Sellers anticipates that ESI constituting, among other things, email; word processing documents; presentations; spreadsheets; internal or external wiki pages, internet pages, or intranet pages; audio recordings; and video recordings will be among the types of files discoverable in this action. Thus, Apica Sellers believes that such sources or repositories as back-up systems, archive systems, legacy computer systems, cloud storage systems, computer hard drives, removable media (such as external hard drives, thumb drives, ets.), personal computer systems (including, without limitation,

desktops and laptops), tablets, and mobile phones are appropriate sources of discovery.

Abbott: Abbott anticipates that ESI constituting, among other things, email, word processing documents, PDFs, presentations, spreadsheets, and images will be among the types of files discoverable in this action. Furthermore, Abbott believes that the sources or repositories for discovery may encompass one or more of the following: cloud storage systems, computer hard drives (from laptops and/or desktop systems), removable media (such as thumb drives), physical paper files, shared drives/network shares (including production of ESI from a legacy Thoratec server), and structured data systems.

(b) Limitations on Production. The parties have discussed factors relating to the scope of production, including but not limited to: (i) number of custodians;(ii) identity of custodians; (iii) date ranges for which potentially relevant data will be drawn; (iv) locations of data; (v) timing of productions (including phased discovery or rolling productions); and (vi) electronically stored information in the custody or control of non-parties. To the extent the parties have reached agreements related to any of these factors, describe below:

Apica Sellers: Notwithstanding anything in this paragraph or in this Order, to the contrary, nothing shall relieve a party or non-party responding to discovery of their duty to search for and produce ESI from whatever sources the responding party or non-party reasonably believes may have responsive ESI—even if such sources have not been specifically identified as a custodian by the requesting party. ESI may also be focused as follows: (i) and (ii) the parties shall meet and confer to identify likely custodians of responsive information, including without limitation former employees of a party or that party's predecessors-in-interest; a requesting party may identify up to eight (8) custodians of a responding party or such party's predecessors-in-interest for such responding party to specifically search for responsive ESI; (iii) no party or non-party shall be required to search for or produce ESI created on or before January 1, 2013 ; (iv) the parties shall meet and confer to identify likely locations of responsive ESI; (v) production of ESI shall be done on a rolling basis, as responsive ESI is identified and reviewed; (vi) ESI in the custody or control of non-parties shall be governed by this Order, with the understanding that due care must be taking to not overly burden non-parties to this action.

Abbott: Abbott will conduct a reasonable and good faith search to identify potentially responsive ESI, and shall produce non-privileged and responsive ESI to Apica's discovery requests subject to Abbott's responses and objections. In addition, ESI may be focused as follows: (i)

a requesting party may identify up to eight (8) potential custodians of a responding party (ii) the parties shall meet and confer to identify and reach agreement on custodians of responsive information (iii) no party or non-party shall be required to search for or produce ESI created on or before January 1, 2013 or after February 9, 2023 (provided that financial documents necessary to calculate amounts due under any milestone or royalty provision of the EPA shall be produced even if created after February 9, 2023). (iv) the parties shall conduct a reasonable search to identify potentially relevant sources/locations of ESI (v) the production of ESI shall be done on a rolling basis, as responsive ESI is identified and reviewed; (vi) ESI in the possession, custody, or control of non-parties shall be governed by this Order and the specific subpoenas issued under Rule 45 of the Federal Rules of Civil Procedure (FRCP) for the production of documents to non-parties.

It is understood and agreed among the parties that, to the extent any ESI discoverable in this action is subject to the regulation or protection of the European Union's General Data Protection Regulation ("GDRP") (or other applicable data privacy law, statute, or directive), any preservation, access, review, and/or production of such ESI shall be done in compliance with the GDRP (or other applicable data privacy law, statute, or directive).

(c) Form(s) of Production:

(1) The parties have readied the following agreements regarding the form(s) of productions:

i. PDFs shall be produced in single-page color JPG image format. The parties reserve the right to seek cost shifting if the color production costs become unreasonably expensive. All other ESI, with the exception of native files, shall generally be produced in single-page TIFF image format, with no less than 300 dpi resolution. All images shall be produced with extracted text or Optical Character Recognition ("OCR") text, logical unitization and family relationships preserved, the metadata set forth below, and load files (e.g. .DAT, .OPT) for customary litigation review databases as requested by the requesting party.

ii. Hard copy documents will be produced as TIFF images at not less than 300 dpi resolution, with OCR text and load files.

iii. Parent-child relationships (the association between an attachment and its parent record) shall be preserved.

iv. Production should be made using appropriate electronic media of the producing party's choosing, provided that the production media chosen not impose an undue burden or expense upon the requesting

party.

v. Where a document requires redaction, the unredacted content of such document should be extracted by real extracted text or OCR to a searchable text file produced with the corresponding page image(s) or embedded within the image file. Redactions should not be accomplished in a manner that serves to downgrade the ability to electronically search the unredacted portions of the document.

vi. All documents shall be produced in a form that includes metadata identifying the beginning and end Bates number for each document, and each attachment.

vii. ESI shall be produced in a manner that also includes the following metadata fields, to the extent available from the electronic file source or, in the case of bates numbering, as supplied by the producing party:

| **Field** | **Description** |
|---|---|
| Bates_Begin | Beginning Bates number for the document. |
| Bates_End | Ending Bates number for the document. |
| Attach_Begin | The Bates number of the first page of a family of documents (e.g., email and attachment). |
| Attach_End | The Bates number of the last page of a family of documents. |
| Custodian | The custodian in whose file the document was found – Last Name, First Name format. |
| Pagecount | Number of pages in document. |
| DocExt | Document Extension is the file extension of the native file. |
| Type | Identifies whether the document is an email, e-mail attachment, or file, i.e., E-DOC, Email, EmailAttach. |
| Filesize | Size of native file, in bytes. |
| Create_Date | For e-files or attachments, the document's creation date or operating system creation date (mm/dd/yyyy format). |
| Create_Time | For e-files or attachments, the document's creation time or operating system creation time. |
| Modified_Date | For e-files or attachments, the document's last modified date or operating system last modified date |
| Modified_Time | For e-files or attachments, the document's last modified time or operation system last modified time. |
| Subject | The contents of the Subject field for an e-mail (blank for files). |
| Title | The filename of an attachment or stand-alone e-file (blank for email). |
| Author | The author of a stand-alone e-file or attachment. |

| | |
|---|---|
| From | From field extracted from an email message (blank for files). |
| To | To or Recipient field extracted from an email message (blank for files). |
| CC | CC or Carbon Copy field extracted from an email message (blank for files). |
| BCC | BCC or Blind Carbon Copy field extracted from an email message (blank for files). |
| Sent_Date | Sent date of an email message (mm/dd/yyyy format). |
| Sent_Time | Time the email message was sent in the particular time zone of the Custodian. |
| MD5 | The calculated MD5 hash value of the document. |
| Conf_Desig | The confidentiality designation, if any, for the document pursuant to the Protective Order. |
| ProdVolume | Identifies production media deliverable |
| Redacted | "Yes," for redacted documents; otherwise blank |
| Native_File | Path and file name of the native file for documents produced in native format. This is the location in the output where the native file is stored. This value will be blank if the file is not delivered natively. The path will be in the following format: ProductionName\Natives\FolderNumber\filename |
| Text_Path | Path and file name of the text file containing extracted or OCR text. The path will be in the following format: ProductionName\Text\FolderNumber\filename.txt |
| Confidentiality | Language of Confidentiality stamp applied to each document |

(2) Please specify any exceptions to the form(s) of production indicated above (e.g., word processing documents in TIFF with load files, but spreadsheets in native form):

Discoverable information that exists in electronic form that would be difficult or impossible to produce or review in TIFF Format, such as Microsoft Excel files, Microsoft PowerPoint files, audio files, or video files, should be produced in Native Format. The producing party will rename the filename of any such produced native file to reflect Bates number information, and if technically feasible, confidentiality designations. For any such native files being produced, the producing party will also provide TIFF slipsheets which will reference the production of a native file with branded bates number information and confidentiality designations. The table below supplies the Native Format in which specific types of ESI should be produced when appropriate.

| File Type | Native Format(s) |
| --- | --- |
| Microsoft Excel Spreadsheets | .XLS, .XLSX, .XLSM, .XLSB |
| Microsoft PowerPoint | .PPT, .PPTX |
| Microsoft Access Databases | .MDB, .ACCDB |
| Images | .JPG, .JPEG, .PNG |
| Audio and Video Files | .MP3, .MP4, .WAV |

To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties agree to meet and confer, with an understanding of which fields are relevant, to agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

(3) The parties anticipate the need for judicial intervention regarding the following issues concerning the form(s) of production:

Not at this time.

(d) Privileged Material.

(1) Identification. The parties have agreed to the following method(s) for the identification (including the logging, if any, or alternatively, the disclosure of the number of documents withheld), and the redaction of privileged documents:

i. Privilege logs need not be served until a reasonable period after a party's document productions are substantially complete; provided that a party shall serve its initial privilege log no later than 60-days before the close of fact discovery; documents created after the filing of the initial Complaint in this action (i.e. after February 7, 2023) need not be logged.

ii. Documents withheld from production on the grounds of attorney-client privilege, attorney work product, or any other asserted privilege or protection, shall be identified on a privilege log, which log shall provide, for each withheld document, at least the following information:

      a. Identification number (e.g. bates range or document number) of the document;
b. Date of the document (as available/extracted from metadata)
c. Author of the document (as available/extracted from document metadata);
d. All recipients of the document (including cc's and bcc's) (as available/extracted from document metadata);
e. Subject matter of the document / brief description
f. The type of privilege claimed;
g. A legend or other means of identifying each attorney on the log, and, to the extent not unduly burdensome to compile, the title and employer information for each attorney on the log.

iii. Information redacted from documents otherwise produced shall be identified on a privilege log as set forth above;

iv. For documents that are redacted, the field REDACTED shall be populated in the Load File;

v. The term "Redacted" or such other indication that specific text has been redacted from the document or file shall be reflected on the images to indicate where a redaction occurs.

(2) Inadvertent Production / Claw-Back Agreements. Pursuant to Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), the parties have agreed to the following concerning the inadvertent production of privileged documents (e.g. "quick-peek" agreements, on-site examinations, non-waiver agreements or orders pursuant to F.R.E. 502(d), etc.):

The production, whether inadvertent or otherwise, of any materials which a party or third party later claims in good faith should not have been produced because of a privilege, including but not limited to the attorney-client privilege or work product doctrine ("Privileged Discovery Material"), will not be deemed to have waived any privilege for the Privileged Discovery Material in this matter or any other federal or state proceeding; provided, however, that the parties agree that nothing in this Order is intended to modify the applicable law concerning the scope and application of the selective disclosure waiver doctrine. If the producing party notifies the receiving party that Privileged Discovery Materials have been produced, the receiving party shall promptly destroy or return the Privileged Discovery Material (and all paper and electronic copies) to the producing party or third party. The receiving party shall delete the Privileged Discovery Material from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents. Within seven days of the aforementioned deletion or return of Privileged Discovery Material, the producing party shall provide the receiving party with a privilege log regarding the Privileged Discovery Material. The

        receiving party may move the Court for an order compelling production of the Privileged Discovery Material, which shall be filed under seal, and the motion shall not assert as a ground for entering such an order the fact or circumstances of the production. The receiving party may make no use of the Privileged Discovery Material during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court as not privileged or protected. This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d), and other applicable laws and regulations.

(3) The parties have discussed a 502(d) Order. Yes **X**; No _

*The provisions of any such proposed Order shall be set forth in a separate document and presented to the Court for its consideration.*

(e) Cost of Production. The parties have analyzed their client's data repositories and have estimated the costs associated with the production of electronically stored information. The factors and components underlying these costs are estimated as follows:

(1) Costs:

The parties have analyzed their client's data repositories and have not yet estimated the costs associated with the production of electronically stored information.

(2) Cost Allocation. The parties have considered cost-shifting or cost-sharing and have reached the following agreements, if any:

The parties shall bear their own costs, absent other agreement or by order of the Court.

(3) Cost Savings. The parties have considered cost-saving measures, such as the use of a common electronic discovery vendor or a shared document repository, and have reached the following agreements, if any:

None. Each party shall retain and use an electronic discovery vendor of their own choice.

(f) The parties anticipate the need for judicial intervention regarding the following issues concerning the production of electronically stored information:

Not at this time.

**(8)    Other Issues:**

None of this time.

The preceding constitutes the agreement(s) reached, and disputes existing, (if any) between the parties to certain matters concerning electronic discovery as of this date. To the extent additional agreements are reached, modifications are necessary, or disputes are identified, they will be outlined in subsequent submissions or agreements and promptly presented to the Court.

Party: Apica Sellers Representative, LLC — By: Jeffrey C. Morgan (*pro hac vice*)

Party: Abbott Laboratories — By: Michael Skokna (*pro hac vice*)

The next scheduled meet-and-confer conference to address electronic discovery issues, including the status of electronic discovery and any issues or disputes that have arisen since the last conference or Order, shall take place on: None scheduled at this time.

The next scheduled conference with the Court for purposes of updating the Court on electronic discovery issues has been scheduled for ______________. Additional conferences, or written status reports, shall be set every 3 to 4 weeks, as determined by the parties and the Court, based on the complexity of the issues at hand. An agenda should be submitted to the Court four (4) days before such conference indicating the issues to be raised by the parties. The parties may jointly seek to adjourn the conference with the Court by telephone call 48 hours in advance of a scheduled conference, if the parties agree that there are no issues requiring Court intervention.

Additional Instructions or Orders, if any: The parties are directed to file a joint status letter on the last business Friday of each month beginning January 26, 2024.

Dated: January 3, 2024

**SO ORDERED.**

**Ona T. Wang**
United Stated Magistrate Judge