**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
APICA SELLERS REPRESENTATIVE, LLC,

              Plaintiff,

          -against-

ABBOTT LABORATORIES,

              Defendant.

------------------------------------------------------------x

23-cv-1034 (MMG) (OTW)

**ORDER**

**ONA T. WANG, United States Magistrate Judge:**

On November 20, 2024, the Court held a status conference wherein the parties discussed the issue of the appropriate cutoff date for Defendant Abbott Laboratories' ("Defendant") proposed subject matter waiver of attorney-client privilege regarding certain privileged communications related to the negotiation of Section 2.05(a)(ii) of the equity purchase agreement ("EPA") at issue in this case. (ECF 90, 92). Both parties previously submitted letter briefing on this issue. (ECF 84, 89). Before the conference, the Court had extended the fact deposition deadline to November 20, 2024, noting that all other fact discovery closed on September 26, 2024. (ECF 95). For the reasons discussed below, Defendant's request for a protective order is **GRANTED**.

I. **DEFENDANT'S PROPOSED SUBJECT MATTER WAIVER OF ATTORNEY-CLIENT PRIVILEGE**

On July 17, 2024, Defendant filed a letter requesting that the Court define the scope of a potential subject matter waiver in connection with Defendant's proposed voluntary production of "all documents exchanged between the business negotiators at Abbott's predecessor in this

case—Thoratec Corporation—and the inhouse lawyers who supported the Thoratec business negotiators when negotiating Section 2.05(a)(ii) of the July 2, 2014 Equity Purchase Agreement ('EPA') at issue in this case." (ECF 84). On September 6, 2024, the Court directed the parties to meet and confer with respect to the scope of the potential voluntary subject-matter waiver of attorney-client privilege. (ECF 86).

On October 2, 2024, the parties filed a joint status letter indicating they could not agree on an appropriate cutoff date for Defendant's proposed waiver. (ECF 89). Defendant, the producing party, proposes a cutoff date of July 2, 2014, the effective date of the EPA. (*Id.*). Plaintiff, the receiving party, argues that limiting the waiver to only include documents and communications before the effective date of the contract would allow Defendant to selectively disclose favorable documents, and that "if Abbott chooses to waive privilege over *any* documents pertaining to the meaning of 'Product Coil,' all such documents should be produced, regardless of when they were created." (*Id.*). Plaintiff thus proposes a cutoff date of February 7, 2023, when the complaint was filed. (*Id.*). The Court heard oral arguments at the November 20, 2024, conference but was unable to resolve the dispute.

Both parties cite to *D.C. Comics v. Kyptonite Corp.*, albeit for different propositions. 00-CV-5562, 2002 WL 1303110 (S.D.N.Y. June 13, 2002). In *D.C. Comics*, the plaintiff sought a limited scope privilege waiver to voluntarily produce a set of privileged correspondence dating from June 8, 1982, through February 1, 1983, relating to the negotiation of an agreement signed in early 1983. *Id.* at *2-3. Noting that attorney-client privilege "cannot at once be used as a shield and a sword," the Court concluded that the plaintiff's proposed temporal waiver was underinclusive because the start date of the proposed waiver period was arbitrarily tied to the

2

date that a particular attorney became involved in the negotiations, and the proposed waiver thus improperly excluded similar communications prior to her involvement: "If as DC claims, the subject matter waiver is those communications relating to the negotiations of the 1983 Agreement, then the privilege waiver should extend to the entire negotiation of the 1983 Agreement, not just the negotiations after Amy Katz began to participate in them." *Id.* at 6. (internal quotations omitted). However, the *D.C. Comics* court specifically endorsed the <u>effective date</u> of the agreement as the appropriate end date for the limited privilege waiver, concluding that communications after the effective date of the agreement did <u>not</u> relate to its negotiation. *Id.*

Here, as in *D.C. Comics*, the proper cutoff date is the effective date of the EPA because the issue in the case is the <u>negotiation and drafting</u> of Section 2.05(a)(ii) of the EPA and the meaning of the term "Product Coil" as used therein. Unlike *D.C. Comics*, Plaintiff's proposed cutoff date is drastically <u>overinclusive</u> because it would extend the privilege waiver nearly ten years past the effective date of the Agreement in question, and there is no reason to suggest that privileged communications in this period relate to the <u>negotiation</u> of the EPA or the meaning of the disputed term at the time the parties entered into the agreement. While the parties' joint interpretation of a contract provision in practice (i.e., post-execution) may, in some instances, be probative of the parties' original intent, the "unilateral expression of one party's postcontractual subjective understanding of the terms of the agreement is not probative." *Aircraft Servs. Resales LLC v. Oceanic Capital Co., Ltd.*, 09-CV-8129 (PKC), 2013 WL 4400453, at *2-3 (S.D.N.Y. Aug. 14, 2013) (internal quotations omitted). Defendant's proposed disclosure concerns privileged communications between Thoratec Corporation and their

3

counsel during the negotiations of the EPA. There is no suggestion that the potential disclosure concerns communications between Thoratec and Plaintiff or Defendant and Plaintiff, such that the communications would evince how both parties interpreted the EPA in practice prior to this litigation. *Cf. Ocean Transport Line, Inc. v. Am. Philippine Fiber Industries, Inc.*, 743 F.2d 85, 90-91 (2d Cir. 1984) (concluding that the parties' joint interpretation of the contract in practice was highly probative where the parties' original intent was not immediately clear). Defendant's unilateral post-execution interpretation of the contract is simply not probative of the parties' intent during the negotiation of the EPA. *Aircraft Servs. Resales,* 2013 WL 4400453, at *2-3.

Accordingly, Defendant's request for a protective order is **GRANTED.** If Defendant seeks to produce documents exchanged between Thoratec and its in-house counsel as they relate to the negotiation of Section 2.05(a)(ii) of the EPA, they will thereby waive the attorney-client privilege[1] and work product protection with respect to all such privileged/protected communications from on or before July 2, 2014, the effective date of the EPA. If Defendant decides not to produce any privileged documents or communication, this protective order will be moot, and the documents and communications will remain privileged.

## II.    FACT DISCOVERY DEADLINES

On June 7, 2024, the Court entered an amended scheduling order which, among other things, set the deadline for fact discovery and expert discovery as September 26, 2024, and December 19, 2024, respectively. (ECF 76). On September 5, 2024, the parties filed a joint letter motion seeking a "limited 45-day extension of the fact discovery period, solely for the purpose

---

[1] Plaintiff argues in the alternative that if its proposed temporal scope of Defendant's limited waiver is denied that Defendant should not be allowed to produce the documents at all. (*See, e.g.*, ECF 72).

of completing depositions." (ECF 84). The Court granted this request on September 6, 2024, extending the fact deposition deadline to November 12, 2024, and the expert discovery deadline to March 3, 2025. (ECF 87). The parties then indicated in a joint letter that, with the exception of the depositions of third-party fact witnesses Jon Shear and Robert Edesess, fact discovery would be substantially complete by November 12 fact deposition deadline. (ECF 93). In anticipation of the November 20 conference, the parties submitted a joint letter on November 11, 2024, seeking a temporary stay the November 12 deadline. (ECF 94).

Given that the parties postponed the third-party fact witness depositions pending my ruling on the privilege issue discussed above, the parties are now directed to meet and confer and file a joint status letter on the docket by **Monday, December 9, 2024,** indicating what discovery remains outstanding, if any, and proposing new deadlines for fact discovery and, if needed, expert discovery.

**SO ORDERED.**

Dated: December 4, 2024
      New York, New York

_s/ Ona T. Wang_
**Ona T. Wang**
United States Magistrate Judge

5